Foster, P. J.
This is an appeal by the plaintiff from an order and judgment which set aside the verdict of a jury rendered in his favor in a negligence action, and dismissed his complaint on the ground that he was guilty of contributory negligence as a matter of law. This disposition of the case by the trial court requires us to assume every inference favorable to the plaintiff that may he fairly drawn from the testimony.
The defendant-respondent owns and maintains an electric light and power line along the Burden Lake-Averill Park high *46 way in the county of Bensselaer. On November 8, 1947, between 12:30 noon and one o’clock, one of the wires on this line broke and fell to the ground. It was a stormy day, with heavy wind and rain at the time. The end of one strand of the broken wire came to rest in a ditch immediately adjacent to the highway. Plaintiff, then a probationary State trooper, together with another trooper, was ordered by his superior to proceed to the scene. They arrived there a few minutes before one o’clock, and began to direct traffic so as to prevent contact with the fallen wire. Prior to their arrival one of the nearby residents had called by telephone the home of an employee of the defendant, whose name was Wehnau, to notify him that the wire was down. Shortly after the troopers arrived they radioed to police headquarters at Troy, N. Y., to inquire whether the power company had been notified. The sergeant there in charge called the company at Averill Park, N. Y., and was informed by someone there that the company already knew about the wire being down and had taken care of it.
After plaintiff and his companion had been directing traffic for some time in the rain they were invited into a neighboring house to have coffee. It was decided that plaintiff should go first and leave the other trooper on the highway. Before he went into the house he noticed that the broken end of the wire had emitted some sparks and apparently had caused leaves to smoulder in the ditch where it lay. But this evidence of energy had ceased some fifteen or twenty minutes before he went into the house to get the coffee. While in the house his attention was called to an automobile which had stopped in the area where the wire lay. He immediately left the house and went to the highway, where he found that in some way the wire had become entangled with the right rear bumper of the car. The defendant Haight, who was the owner and driver of the car, had alighted from it and was standing outside. The motor was still running. The wire, which had caught on the bumper was in close proximity to the gas tank of the car and there was some discussion as to the possible danger of an explosion, and also as to the advisability of shutting off the motor. Haight turned to go back to the car, and then plaintiff went past him and put his left hand against the left front fender of the car. He received no shock or sensation of any kind, and thereupon he put his hand to the handle of the door. As he did so he received a severe electric shock and was rendered unconscious.
On the basis of these facts, most of which are not disputed and all of which the jury certainty had the right to find, we are unable *47 to agree with the trial court that plaintiff was guilty of contributory negligence as a matter of law. As a police officer plaintiff was charged with the duty of assisting and protecting the public. In the discharge of this duty he could not be concerned solely with his own safety, and hence he might reasonably incur a risk which a private citizen could not without the imputation of negligence as a matter of law (Dillon v. Allegheny County Light Co., 179 Pa. 482; Muhs v. Fire Ins. Salvage Corps., 89 App. Div. 389). Unless his conduct amounted to clear recklessness it should be judged as an issue of fact and not as a matter of law. The proof indicates that he did not act with such recklessness. On that score these elements must be considered: (1) he had a right to assume that the power company had been notified an hour before of the condition of the broken wire, and to couple this assumption with the apparently significant fact that the wire had ceased to give signs of life some time before; (2) Haight had alighted from the car with safety and in all human probability had grasped the handle of the door; (3) when plaintiff touched the left fender of the car he received no shock, and if the fender was not charged it was reasonable to assume that the door handle was not. There is yet no adequate explanation of the inconsistent pattern involved in the last two elements but courts are not required to reconcile the vagaries of electrical phenomena as a matter of law (Walters v. Syracuse R. T. Ry. Co., 178 N. Y. 50). Plaintiff took a risk to be sure rather than permit a private citizen to expose himself to possible danger, but his conduct did not amount to rashness as a matter of law. He may have erred in judgment but the jury could find that he honestly believed that an emergency existed requiring some affirmative action. That a physicist or an electrical engineer might have acted differently, and with better judgment, does not remove his conduct from the realm of fact for a jury to pass upon.
It is also argued in this court that plaintiff failed to prove the defendant-respondent negligent. In reviewing this point we are mindful that the doctrine of res ipsa loquitur has frequently been applied to cases of this character. Where a corporation assumes to control the distribution of electricity for profit it must exercise reasonable care to prevent it from escaping and becoming a menace to common safety (Webster v. Richmond Light & R. R. Co., 158 App. Div. 210). "Wires carrying a lethal or disabling current that break and fall along a public highway have been held to constitute prima facie proof that reasonable care was not exercised, and unless the presumption is rebutted *48 no further proof is necessary (Hebert v, Hudson Riv. Elec. Co., 136 App. Div. 107; O’Leary v. Glens Falls Gas & Elec. Light Co., 107 App. Div. 505; Wolpers v. New York & Queens Elec. Light & Power Co., 91 App. Div. 424; O’Flaherty v. Nassau Elec. R. R. Co., 34 App. Div. 74, affd. 165 N. Y. 624).
The case at hand was not submitted under such a theory but nevertheless in our view the evidence adduced was sufficient to make a question of fact for the jury on the issue of defendant-respondent’s negligence, assuming for the purposes of the case that the wire broke because of the storm and without negligence on the part of the defendant-respondent.
The wire which broke and fell was a street light circuit wire according to the testimony of defendant’s repairman, and a part of a single-phase primary distribution system carrying between 4,600 to 4,800 volts. The power came from a substation located at Sand Lake about seven miles away. Although it was a stormy day and the company had considerable trouble with other parts of the line no one was on duty at the substation where the power could have been shut off. Twenty miles of power lines were serviced by two men ordinarily, and on the day of the accident two more men were added when one of the original servicemen asked for help. At the Sand Lake substation there were automatic controls and hand operated switches, but defendant’s serviceman could not tell whether the automatic controls were in proper working order on the day of the accident. In the field a certain type of fuse was used as an automatic current breaker to control the primary lines, but again according to the testimony of the serviceman Wehnau this type of fuse would blow with an overload but not necessarily from a break in the line. Prior to the date of the break Wehnau had never inspected the fuses of this type on the line to see if they were in proper order. No other breaking equipment was in use. Such were the physical conditions of which the defendant must be held to have had notice.
The jury could have reasonably found from the testimony that the company was notified of the fallen wire in question at least an hour before plaintiff was injured. An objection is made to the telephone message from the police headquarters at Troy to the company through the Averill Park telephone operator on the ground that the police officer could not identify the voice at the other end of the wire. The ordinary rule of evidence applied to telephone conversations should not apply in this case where an emergency existed and a police officer in the discharge of his official duty had called upon the telephone operator to con *49 nect Mm with the power company. The jury had a right to believe under such circumstances that the company had notice without proof of the identity of the listener. Upon the receipt of notice the company had two alternatives as we view the matter. It could repair the break if that could be done with a dispatch consonant with the public safety, or it could shut off the power to that part of the line where the break occurred. It was required to have facilities for either one course or the other. It did neither within an hour and within that hour the plaintiff was injured. Whether it acted with reasonable dispatch in attempting to repair the line without shutting off the power, or whether it failed to exercise reasonable care in not breaking the current, either from lack of facilities or otherwise, was, under all the circumstances, a question of fact for the jury.
Ko issue has been raised on appeal as to the extent of plaintiff’s injuries or the amount of the verdict, nor has the defendant-respondent based its appeal on any exceptions to the trial court’s charge. The case against the defendant Haight was properly nonsuited since there was no evidence of negligence against him.
The order and judgment should he reversed and the verdict reinstated, with costs of this appeal to the plaintiff-appellant.
Heffernan, Deyo, Santry and Bergan, JJ., concur.
Order and judgment reversed and the verdict of the jury reinstated, with costs to the plaintiff-appellant.