ing a pole. Q. Do the thing that appears easiest, without regard to the question of danger, is that right? A. Yes, sir."

It is unfortunate that Loughlin took the dangerous way, because for the time being it seemed the easier way; but the consequences of his deliberate and reckless conduct should not be visited upon the defendant.

I think that the judgment and order appealed from should be reversed.

THOMAS, J., concurs.

---

### WECKER v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department. January 21, 1910.)

1. STREET RAILROADS (§ 98*)—INJURIES—CONTRIBUTORY NEGLIGENCE—CARE REQUIRED.

Since, in a city like Greater New York, the highest speed is required of street cars consistent with the safety of passengers and pedestrians, the latter must use care for their safety proportionate to the danger incident to such legitimate operation of the street cars.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. § 98.*]

2. STREET RAILROADS (§ 98*)—INJURIES—CONTRIBUTORY NEGLIGENCE.

Where a pedestrian's vision of street cars is obscured by darkness, obstructions, etc., he, as well as the motorman, must exercise increased vigilance in looking out for a street car in crossing the track, and may even be required to make repeated efforts to determine whether a car is near before crossing the track.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 207, 208; Dec. Dig. § 98.*]

3. STREET RAILROADS (§ 98*)—INJURIES—CONTRIBUTORY NEGLIGENCE—CARE REQUIRED.

The rule permitting a finding of due care by one injured by a street car in certain cases upon slight evidence, as where the injured person dies and is unable to testify, does not relax the degree of care required by him where such special circumstances do not exist.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 204; Dec. Dig. § 98.*]

4. STREET RAILROADS (§ 98*)—INJURIES—CONTRIBUTORY NEGLIGENCE—FAILURE TO STOP AND LOOK.

Plaintiff, in attempting to cross the double tracks of a street railway where they ran under the pillars of an elevated railway, and while 20 feet from the point at which he was struck, saw a car approaching some 125 feet away, but did not try to determine its probable speed or again look at it, relying upon it giving him time to cross safely. Held, that plaintiff was negligent in crossing without attempting to obtain further information upon which to base his judgment that he could cross safely.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 207, 208; Dec. Dig. § 98.*]

Appeal from Municipal Court, Borough of Brooklyn, Seventh District.

Action by Nathan Wecker against the Brooklyn, Queens County & Suburban Railroad Company. From a judgment for plaintiff, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, THOMAS, and RICH, JJ.

Francis R. Stoddard, Jr., for appellant.

H. S. Austin, for respondent.

THOMAS, J. Plaintiff collided with a lighted car shortly after 9 o'clock at night in November, on Broadway, Brooklyn. He and his partner from their store walked about a half block to the corner, where they separated, and the plaintiff, leaving the sidewalk, saw an approaching car some 125 feet away, as he testifies, and, without further attention, passed upon its tracks, about 20 feet distant, and was injured. His partner, standing meantime on the sidewalk, was attracted by the noise of the car, and seeing it near the plaintiff, as he was passing onto the track, ineffectually called to him in warning. The double tracks were under an elevated railroad supported by pillars midway between the tracks and sidewalk.

Cars are operated in such infinitely varying relations to other uses of the street that it would be rash and harmful to state a general rule of duty. In Greater New York the daily transportation and distribution of a considerable portion of the population demands the highest speed consistent with the safety of those carried and others walking or riding in the streets, and the latter class must use self-protecting care measured by the danger incident to the legitimate operation of the railways. In some streets cars are with slight intermission appearing, sometimes suddenly, passing and departing on two or more tracks, and common experience teaches the peril of looking for cars only at the curb and expecting safety on the track. Indeed, there are conditions made so dangerous by the exigencies of railway travel that looking repeatedly in both directions with vigilance, and even waiting for an opportune moment to pass, may be demanded. When a person is about to step over a rail it is usually practicable and useful to see whether a car is at his elbow. There may be divers dangers and distractions that preclude it, or conditions of weather or obstruction that prevent it, or impairment of faculties that excuse it, or conduct of the operating company that seemingly invite disregard of it. This last statement includes the exception that, when the elements of danger on every hand are multiplied and urgent, some of those presented may be much more imminent than others. In such predicament the pedestrian, having looked in a certain direction and ascertained that a car apparently will not imperil passage, may be constrained to concentrate his attention on the danger that menaces him. A similar condition was considered by the court in Boyce v. New York City Ry. Co., infra.

Passing from conditions dangerous through congestion, I advert to those dangers incident to darkness, storm, and obstruction, where the difficulties incident to interrupted or impaired vision necessitate increased vigilance on the part of pedestrian and operator of car, even to such an extent as to demand repeated effort on the part of the pedes-

trian and very much increased vigilance on the part of the operator. Under such conditions falls the case at bar. In considering the law and the decided cases on this subject, it should be discriminated that the courts do not relax the requirement of vigilance by accepting at times scant evidence that it was employed. For instance, when the injured person dies, the rule permitting inferences of due care on his part from facts slightly probative comes into play, and the court permits findings, based thereon, that the decedent looked sufficiently, without specific affirmative evidence of the times and places of looking.

In the case at bar it is not even necessary to hold that the plaintiff was obliged to give affirmative evidence of repeated looking. He affirms that he did not again look. Moreover, he was absolutely unconcerned. According to his evidence, his apparent problem was to walk 20 feet and pass in front of a car 125 feet away. How did he go about it? He testified:

"I ain't no experience in speeds. The car was going fast, of course; not very fast. I didn't notice it. I noticed the car coming; that is about all."

What calculation for a safe crossing did he make? He testifies:

"I thought it would give me enough time to cross over the track."

Here, then, is a case where a man in the night, in a street obstructed by a series of elevated railway pillars, at a distance of 20 feet from the point of collision, saw a car as estimated on the trial as 125 feet away, did not try to measure its probable speed, did not pay any further attention to it, but relied upon its giving him time enough to cross over, and was hit on the track. When the conditions are considered, especially the difficulties of calculating correctly the distance away of a lighted car approaching in the dark, the plaintiff was guilty of unqualified negligence. When a pedestrian and car arrive at the same point at the same time, and vigilance is required of the former and the operator of the car lest the collision occur, the pedestrian should not be heard to say that one undiscerning look fulfilled his duty. Such attempted discovery could not give him information upon which to base a fair judgment that his pathway was safe. A survey of decisions condemns the plaintiff.

Lofsten v. Brooklyn Heights Railroad Co., 184 N. Y. 148, 76 N. E. 1035, reversing 97 App. Div. 395, 89 N. Y. Supp. 1042: Plaintiff, of mature age, approaching the curb, saw a car 50 feet distant approaching at the rate of 5 or 6 miles per hour. He did not look again towards car, nor take the slightest pains to ascertain where car was, until a shout called his attention to it. There was nothing to obstruct the view or to divert his attention.

Healey v. Brooklyn Heights R. R. Co., 18 App. Div. 623, 45 N. Y. Supp. 393: Plaintiff on stoop of a house looked towards Bedford avenue to see if car was coming, saw none, proceeded to, and "walked easy" along, the street, and was struck by car coming from Bedford avenue. The decision was that it was necessary for the plaintiff to prove that she did look after leaving the stoop and before attempting to cross the track.

Kappus v. Metropolitan Street Ry. Co., 82 App. Div. 13, 81 N. Y. Supp. 442: Plaintiff immediately prior to the accident, at the southwest corner of Ninety-First street and Second avenue, looked north and south, and saw no north-bound car, walked slowly east on the south crosswalk, before reaching south-bound tracks again looked and saw no cars, did not look again until he stepped upon north-bound tracks, when he saw car almost upon him, and was struck by it. It was dark, but the car was unobstructed. One of plaintiff's witnesses stated that plaintiff looked north before he started over the tracks and the car was ten feet north of Nineteenth street; that plaintiff did not stop nor look south; and that when he stepped on track the car was two feet away. Another of his witnesses testified that plaintiff did not look in any direction after leaving the corner, and that when he stepped on the north-bound track the car was close upon him. It was ruled that plaintiff's negligence contributed to his injury.

Lynch v. Third Ave. R. R. Co., 88 App. Div. 604, 85 N. Y. Supp. 180: In the daytime plaintiff, when leaving the northeast to go to the northwest corner at the intersection of streets, saw "about a block and a half to two blocks away" a car plainly visible. Thereafter he used no care and was struck. Judgment for plaintiff was reversed; Patterson, J., dissenting, and Laughlin, J., concurring in result on ground that verdict was against the weight of evidence.

Greene v. Metropolitan St. Ry. Co., 100 App. Div. 303, 91 N. Y. Supp. 426: Plaintiff at corner of street in daytime saw a rapidly approaching car three-quarters of a block away; did not look again until he was in the center of the south-bound track, where he could not escape collision. The opinion states that it was contributory negligence to step in front of a rapidly approaching car, and that in this view it was immaterial whether he looked after leaving sidewalk. I consider that his failure to look intermediate the curb and the track was itself the cause of his stepping in front of the car.

Robinson v. Union Ry. Co., 121 App. Div. 558, 106 N. Y. Supp. 203 (affirming judgment of nonsuit): Plaintiff, crossing in the middle of block after dark, saw a car approaching at medium speed, 60 to 80 feet away, as he was about to step upon an unobstructed track, and looked again when in the middle of the track, whence the jumped back and was hit. The plaintiff in the case at bar did not even look as he was about to step on the track.

McAuliffe v. New York City Ry. Co., 122 App. Div. 633, 107 N. Y. Supp. 522: Decedent left the curb to cross the street, had only 7 or 8 feet to go before reaching the track, but before he could get across was hit and killed. He had an unobstructed view of a lighted car. Contributory negligence prevented recovery.

Tully v. New York City Ry. Co., 127 App. Div. 688, 111 N. Y. Supp. 919: A woman aged 68 looked before she attempted to cross street, and saw a car two blocks away, and was struck near the rail of fourth track. The court held that a nonsuit should have been granted; also that the court should have charged that the plaintiff was required to look after she left the curb, before she tried to cross the track. Laughlin, J., dissented.

Daly v. New York City Ry. Co., 132 App. Div. 359, 116 N. Y. Supp. 698: Plaintiff and wife, on sidewalk on south side of Twenty-Third street, New York, wished to board west-bound car. Plaintiff looked and saw west-bound car at a distance of 75 or 100 feet from him, looked west and found way safe over east-bound tracks, attempted to cross on the walk to the north side without looking east again, and was struck on the west-bound track by the car he had seen to the west of him. Nonsuit on ground of contributory negligence was approved.

The above cases indicate the general rule. But conditions presenting a complication of dangers, aggravated by unappreciated negligence of the defendant and the death of the defendant, whereby his evidence was lost, justified a holding that the absence of evidence of a second look toward the offending car did not prevent recovery.

Boyce v. New York City Ry. Co., 126 App. Div. 248, 110 N. Y. Supp. 393: The decedent at luncheon hour attempted to cross lower Broadway and was killed by a south-bound car going at a speed characterized as reckless. The curb was 13 feet from the first rail and 17 feet 8 inches from the second rail. At the curb the decedent looked both ways. A car was approaching on the south-bound track. The court held that the question whether he should have looked again before crossing the south-bound track was properly left to the jury. The court justified the presumption that he saw the north-bound car, and calculated that it was safe to cross ahead of it, considering that he is presumed not to have appreciated its unwarranted speed, and was occupied also by the car approaching from the opposite direction.

Counsel for the respondent calls attention to other cases that give him scanty aid.

Lewis v. Erie R. R. Co., 105 App. Div. 292, 94 N. Y. Supp. 765: Decedent, while driving a team, was killed at a railroad crossing. There was no evidence that he looked and listened. The court held that there was some evidence that he could not have seen nor heard train until it was too late. The verdict for plaintiff was sustained.

Thornton v. Interurban St. R. Co., 128 App. Div. 872, 113 N. Y. Supp. 127: The plaintiff in the daytime went to the curb of the street, and then, and before attempting to cross, looked in both directions for a car, did not see any car coming, started to cross, and was injured on the tracks. The report does not show the distance over which plaintiff passed to reach the tracks, nor her environment, and the language suggests that she looked at the curb and also before crossing. Her recovery was sustained.

Plunkett v. Brooklyn Heights R. R. Co., 129 App. Div. 572, 114 N. Y. Supp. 276: A woman aged 65 years, in a district described as "rural," at the curb looked, and again looked before getting to the track on which the car hit her, but saw no car. There was some evidence of obstructed view, of the lights of the car obscured by the window shades, and the judgment for the plaintiff was sustained. The court, Hooker, J., dissenting, refused to apply the doctrine that if she looked she saw car, or looked negligently if she failed to see it. The plaintiff fulfilled the law of looking, but escaped the condemnation of not seeing.

Quinlan v. Richmond Light & R. Co., 133 App. Div. 402, 117 N. Y. Supp. 641: A boy nearly 10 years old was playing ball in the street. The ball bounded across the street and he started to get it. He looked both ways, saw a car about 215 feet away. Between the double tracks he looked again, and saw the car 44 feet away, increased his speed and cleared track, but was struck by projecting handle of car. It was held that nonsuit should not have been granted, even had the plaintiff been an adult. Here is evidence of looking the second time.

Duffy v. Interurban St. Ry. Co. (Sup.) 101 N. Y. Supp. 767 (Appellate Term): The holding is that a person who at a crossing attempts to go a distance of 15 feet in front of a car approaching from a distance of 150 feet is not per se negligent. The question of looking the second time is not presented.

Robkin v. Joline (Sup.) 114 N. Y. Supp. 98 (Appellate Term): The opinion states that:

"The jury could properly find that when these pedestrians left the curb, with the apparent intention of crossing the track, the car was at a sufficient distance to have justified their attempt, in reliance upon the observance of ordinary care by the person charged with its control."

It was said that the motorman had ample opportunity to observe plaintiffs' approach, and to expect their presence on the track, and that plaintiffs were not per se negligent, even though their crossing involved lessening the speed of the car, and that the court properly refused to charge that plaintiffs were guilty of negligence, if the jury found that plaintiffs omitted to look at approaching car after leaving the curb. As the reported case gives no measurements of distance or time, nor statement of the relation of the plaintiffs to the car, it is impossible to estimate its value in the present case.

The plaintiff's affirmative evidence of indifference to the car after he started to cross the street precludes recovery.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

WOODWARD, JENKS, and RICH, JJ., concur. HIRSCHBERG, P. J., concurs in result.